1

2

3

4

5

6

7

8

9

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

JASMINE PAUL SANCHEZ,

　　　　　　　　　　　　　Plaintiff,

　v.

MITCHELL SHARP,

　　　　　　　　　　　　　Defendant.

Case No. 3:21-cv-00311-MMD-CLB

**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE[1]**

[ECF No. 46]

10    　　　This case involves a civil rights action filed by Plaintiff Jasmine Paul Sanchez

11  ("Sanchez") against Defendant Mitchell Sharp ("Sharp"). Currently pending before the

12  Court is Sharp's motion for summary judgment. (ECF Nos. 46, 48, 62.)[2] On April 20, 2023,

13  the Court gave Sanchez notice of Sharp's motion pursuant to the requirements of *Klingele*

14  *v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988), and *Rand v. Rowland*, 154 F.3d 952 (9th Cir.

15  1998). (ECF No. 51.) Despite the Court *sua sponte* granting <u>two</u> extensions of time, (ECF

16  Nos. 55, 58), Sanchez has failed to file an opposition to the motion. For the reasons stated

17  below, the Court recommends that Sharp's motion for summary judgment, (ECF No. 46),

18  be granted.

19  **I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

20  　　　Sanchez is an inmate currently in the custody of the Nevada Department of

21  Corrections ("NDOC") and is currently housed at the Ely State Prison ("ESP"). (ECF Nos.

22  6, 7.) On July 22, 2021, proceeding *pro se*, Sanchez filed an inmate civil rights complaint

23

24  ────────────────

25  [1]    This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

26

27  [2]    ECF No. 48 consists of Sanchez's medical records filed under seal. ECF No. 62 consists of declarations authenticating exhibits in support of the motion for summary judgment.

28

pursuant to 42 U.S.C. § 1983, ("Complaint"). (ECF No. 1-1.) The Complaint was screened in accordance with 28 U.S.C. § 1915A(a). (ECF No. 6.) The Court dismissed the Complaint in its entirety with leave to amend. (*Id.*) Sanchez filed his first amended complaint ("FAC"), which is the operative complaint in this case, on January 3, 2022. (ECF No. 8.) The Court screened the FAC and allowed Sanchez's to proceed on a conditions of confinement claim and an excessive force claim against Defendant Sharp. (ECF No. 9.)

Sanchez's FAC alleges the following as to the conditions of confinement claim: On February 2, 2021, between 5:28 a.m. and 7:13 a.m., Sharp harassed Sanchez. (ECF No. 8 at 4.) Specifically, Sharp told Sanchez that if Sanchez wanted food, Sanchez would have to "suck [Sharp's] dick first." (*Id.*) Sanchez replied, "hell no" and requested a grievance which Sharp denied. (*Id.*) Sanchez did not get to eat for the three days that Sharp worked in the unit. (*Id.*) During that time, Sharp repeatedly spoke to Sanchez over the intercom and told Sanchez that he was going to "rape" Sanchez and make Sanchez's "asshole bleed." (*Id.*) Every time Sharp entered the unit, Sanchez feared for his life. (*Id.*)

The FAC alleges the following as to the excessive force claim: On February 14, 2021, around 1:14 p.m., Sharp assaulted Sanchez with a shield for no reason. (*Id.* at 5.) Sharp issued Sanchez a notice of charges for an MJ3, battery, even though Sharp assaulted Sanchez. (*Id.*) Sanchez never made any physical or verbal threats. (*Id.*) Prison officials denied Sanchez medical care even though Sanchez was bleeding from the assault and could not feel his fingers for a week and a half. (*Id.*)

The undisputed facts as presented by Defendants are as follows. According to an investigation detail report, on Sunday, February 14, 2021, at approximately 1:13 p.m., Sharp used limited spontaneous force on Sanchez after Sanchez reached past Sharp's protective shield. (ECF No. 46-2 at 1.) There was a delay in Sanchez receiving his food because Sanchez had captured his food slot, resulting in him being the last inmate fed. (*Id.*) Sanchez demanded a new breakfast tray because there was a little bit of oatmeal in his eggs. (*Id.*) Sanchez threatened that he would throw feces and urine at Sharp. (*Id.*) Sanchez was instructed to clear his window, back up, and lift his jacket and spin around,

and Sanchez complied. (*Id.*) The food slot was opened, the shield was placed in front of the food slot, and Sanchez was given his food tray. (*Id.*)

"After receiving his dinner tray when the shield was being lifted so the slot could be shut, he stuck his arm out and underneath the shield and demanded his toilet paper." (*Id.*) When Sanchez stuck his arm out, Sharp placed the shield on Sanchez's arm and used a minimal amount of force to trap Sanchez's arm so that he could not throw anything out of the food slot at himself or non-party Officer Clay. (*Id.*) Sharp then removed the capture shield, backed away, gave Sanchez toilet paper, and secured the food slot. (*Id.*) The Shift Sergeant was notified of the use of force, and Medical responded to the scene. (*Id.*) Sanchez refused medical care and told both Nurse Love and Nurse Schuering that nothing happened, there was no force, and he just wanted his dinner tray. (*Id.*)

The investigation detail report from Officer Clay states that Sanchez sticking his arm out of the food slot was perceived as a threat and that Officer Sharp used a minimal amount of force. (*Id.* at 2.) Nurse Schuering's report stated that Sanchez refused medical care and stated, "what problem?" and "nothing happened." (*Id.*) Sergeant Christopher Miller reported that he accompanied medical staff to Sanchez's cell, watched Sanchez refuse medical treatment and heard Sanchez say, "Seen for what? Nothing happened, the officers feed [sic] me and I gave back my tray. Nothing happened." Nurse Schuering reported that Sanchez refused medical treatment, and a refusal of treatment and release of liability was placed in Sanchez's file. (*See* ECF No. 48-1; ECF No. 48-2.)

According to Sanchez's Inmate Disciplinary History Report, Sanchez has a long disciplinary history based on throwing feces and urine and had "propelling" charges filed against him on, at least, August 4, 2016, August 26, 2016, October 5, 2016, December 27, 2016, January 20, 2017, February 2, 2017, November 10, 2017, May 17, 2018, May 22, 2018, September 19, 2018, December 9, 2018, August 3, 2019, August 16, 2019, September 25, 2019, September 30, 2019, October 4, 2019, January 19, 2020, February 13, 2020, March 19, 2020, March 25, 2020, August 2, 2020, August 10, 2020, May 4, 2021, May 9, 2021, August 1, 2021, August 21, 2021, and October 6, 2021. (ECF No. 46-

1   3.)

2       According to Sanchez's inmate grievance history, Sanchez did not file any

3   grievance about his allegation that Sharp deprived him of food for three days. (*See* ECF

4   No. 46-6.) In grievance #2006-31-2121, Sanchez claims that Sharp denied him his food

5   and harassed him on February 14, 2021. (ECF No. 46-7 at 1.) In this same grievance,

6   Sanchez alleged Sharp used unnecessary force, but Sanchez never filed a proper second

7   level grievance. (*See id.* at 1-13.)

8       In support of the motion for summary judgment, Sharp filed a declaration which

9   states as follows: Sharp is currently employed as a Correctional Officer at ESP, a role he

10  has held since December 7, 2015. Sharp is familiar with inmate Sanchez. On February

11  14, 2021, Sanchez was the last inmate to receive food because he had captured his food

12  slot. When inmates put their arm out of the food slot and capture it not allowing an officer

13  to secure the food slot hindering work duties and allowing inmates to throw bodily fluids,

14  the officers say the inmate "captured" the food slot. When Sharp attempted to give

15  Sanchez food and he stuck his arm out of the food slot, Sharp believed Sanchez was

16  going to throw bodily fluids at him given his Sanchez's threat earlier that morning and his

17  history of throwing urine on officers through the food slot. Sharp only used force to defend

18  himself and was careful to only use the minimum amount of force necessary, consistent

19  with his training. (ECF No. 46-9.)

20      On April 19, 2023, Sharp filed the instant motion for summary judgment arguing (1)

21  Sanchez failed to exhaust his administrative remedies as to the conditions of confinement

22  claim; (2) Sharp did not deprive Sanchez of food; (3) Sharp did not use excessive force;

23  and (4) Sharp is entitled to qualified immunity. (ECF No. 46.)

24  **II.    LEGAL STANDARDS**

25      "The court shall grant summary judgment if the movant shows that there is no

26  genuine dispute as to any material fact and the movant is entitled to judgment as a matter

27  of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The

28  substantive law applicable to the claim determines which facts are material. *Coles v.*

1    *Eagle*, 704 F.3d 624, 628 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242,

2    248 (1986)). Only disputes over facts that address the main legal question of the suit can

3    preclude summary judgment, and factual disputes that are irrelevant are not material.

4    *Frlekin v. Apple, Inc.*, 979 F.3d 639, 644 (9th Cir. 2020). A dispute is "genuine" only where

5    a reasonable jury could find for the nonmoving party. *Anderson*, 477 U.S. at 248.

6         The parties subject to a motion for summary judgment must: (1) cite facts from the

7    record, including but not limited to depositions, documents, and declarations, and then (2)

8    "show[] that the materials cited do not establish the absence or presence of a genuine

9    dispute, or that an adverse party cannot produce admissible evidence to support the fact."

10   Fed. R. Civ. P. 56(c)(1). Documents submitted during summary judgment must be

11   authenticated, and if only personal knowledge authenticates a document (i.e., even a

12   review of the contents of the document would not prove that it is authentic), an affidavit

13   attesting to its authenticity must be attached to the submitted document. *Las Vegas Sands,*

14   *LLC v. Neheme*, 632 F.3d 526, 532-33 (9th Cir. 2011). Conclusory statements, speculative

15   opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient

16   to establish the absence or presence of a genuine dispute. *Soremekun v. Thrifty Payless,*

17   *Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

18        The moving party bears the initial burden of demonstrating an absence of a genuine

19   dispute. *Soremekun*, 509 F.3d at 984. "Where the moving party will have the burden of

20   proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable

21   trier of fact could find other than for the moving party." *Soremekun*, 509 F.3d at 984.

22   However, if the moving party does not bear the burden of proof at trial, the moving party

23   may meet their initial burden by demonstrating either: (1) there is an absence of evidence

24   to support an essential element of the nonmoving party's claim or claims; or (2) submitting

25   admissible evidence that establishes the record forecloses the possibility of a reasonable

26   jury finding in favor of the nonmoving party. *See Pakootas v. Teck Cominco Metals, Ltd.*,

27   905 F.3d 565, 593-94 (9th Cir. 2018); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d

28   1099, 1102 (9th Cir. 2000). The court views all evidence and any inferences arising

1    therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763

2    F.3d 1060, 1065 (9th Cir. 2014). If the moving party does not meet its burden for summary

3    judgment, the nonmoving party is not required to provide evidentiary materials to oppose

4    the motion, and the court will deny summary judgment. *Celotex*, 477 U.S. at 322-23.

5            Where the moving party has met its burden, however, the burden shifts to the

6    nonmoving party to establish that a genuine issue of material fact actually exists.

7    *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, (1986). The

8    nonmoving must "go beyond the pleadings" to meet this burden. *Pac. Gulf Shipping Co.*

9    *v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897 (9th Cir. 2021) (internal quotation

10   omitted). In other words, the nonmoving party may not simply rely upon the allegations or

11   denials of its pleadings; rather, they must tender evidence of specific facts in the form of

12   affidavits, and/or admissible discovery material in support of its contention that such a

13   dispute exists. *See* Fed. R. Civ. P. 56(c); *Matsushita,* 475 U.S. at 586 n. 11. This burden

14   is "not a light one," and requires the nonmoving party to "show more than the mere

15   existence of a scintilla of evidence." *Id.* (quoting *In re Oracle Corp. Sec. Litig.*, 627 F.3d

16   376, 387 (9th Cir. 2010)). The non-moving party "must come forth with evidence from

17   which a jury could reasonably render a verdict in the non-moving party's favor." *Pac. Gulf*

18   *Shipping Co.*, 992 F.3d at 898 (quoting *Oracle Corp. Sec. Litig.*, 627 F.3d at 387). Mere

19   assertions and "metaphysical doubt as to the material facts" will not defeat a properly

20   supported and meritorious summary judgment motion. *Matsushita Elec. Indus. Co. v.*

21   *Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

22           When a *pro se* litigant opposes summary judgment, his or her contentions in

23   motions and pleadings may be considered as evidence to meet the non-party's burden to

24   the extent: (1) contents of the document are based on personal knowledge, (2) they set

25   forth facts that would be admissible into evidence, and (3) the litigant attested under

26   penalty of perjury that they were true and correct.  *Jones v. Blanas*, 393 F.3d 918, 923

27   (9th Cir. 2004).

28   ///

Upon the parties meeting their respective burdens for the motion for summary judgment, the court determines whether reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1018 (9th Cir. 2015). The court may consider evidence in the record not cited by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3). Nevertheless, the court will view the cited records before it and will not mine the record for triable issues of fact. *Oracle Corp. Sec. Litig.*, 627 F.3d at 386 (if a nonmoving party does not make nor provide support for a possible objection, the court will likewise not consider it).

### III.    DISCUSSION

#### A.    Conditions of Confinement

The Eighth Amendment's prohibition against cruel and unusual punishment imposes duties on prison officials to "provide humane conditions of confinement." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety." *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). I

Establishing a violation of the Eighth Amendment requires a two-part showing. First, an inmate must objectively show that he was deprived of something "sufficiently serious." *Farmer*, 511 U.S. at 834, 114 S.Ct. 1970. A deprivation is sufficiently serious when the prison official's act or omission results "in the denial of 'the minimal civilized measure of life's necessities.'" *Id.* (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). The inmate must then make a subjective showing that the deprivation occurred with deliberate indifference to the inmate's health or safety. *Id.* (citing *Wilson v. Seiter*, 501 U.S. 294, 302–03 (1991)).

"Adequate food is a basic human need protected by the Eighth Amendment." *Keenan v. Hall*, 83 F.3d 1083, 1091 (9th Cir. 1996); *see also Foster v. Runnels*, 554 F.3d 807, 812–13 (9th Cir. 2009) (finding the denial of sixteen meals in twenty-three days a sufficiently serious deprivation for Eighth Amendment purposes). According to the Ninth

Circuit, "[t]he sustained deprivation of food can be cruel and unusual punishment when it results in pain without any penological purpose." *Foster*, 554 F.3d at 814 (citing *Phelps v. Kapnolas*, 308 F.3d 180, 182 (2d Cir. 2002)).

"In the same way that an inmate relies on prison officials to provide appropriate medical care, … inmates rely on prison officials to provide them with adequate sustenance on a daily basis. The repeated and unjustified failure to do so amounts to a serious depravation [sic]." *Foster*, 554 F.3d at 814 (internal citations omitted). "Although food is a basic human need, the Eighth Amendment 'requires only that prisoners receive food that is adequate to maintain health.'" *Id.* at 813 n. 2 (quoting *LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir. 1993)).

Here, Sanchez alleges that he was deprived of food over three consecutive days. (ECF No. 8 at 4.) However, there is no evidence that Sanchez was deprived of food as is alleged in the complaint. Sanchez's own grievances contradict the assertions made in his complaint. The only grievance related to deprivation of food is grievance #2006-31-21211, which asserts that Sharp denied Sanchez food on one occasion. (ECF No. 46-7 at 1-2.) Review of the investigation detail report for the day in question shows Sanchez was not denied food, but rather was fed last due to "capturing" his food slot. (ECF No. 46-2.) Sharp's declaration in support of the motion for summary judgment also states Sanchez was the last inmate fed due to "capturing" his food slot. (ECF No. 46-9.) There is no other evidence, other than Sanchez's unsupported allegation, that Sharp ever denied Sanchez food. As discussed, the evidence, which is uncontradicted by Sanchez, shows that Sanchez was never deprived of a meal. Therefore, there is no genuine issue of material fact as to whether Sanchez was deprived of food for three consecutive days, and Sanchez has failed to provide evidence of that essential element of his claim. Because no reasonable juror could find in Sanchez's favor, Sharp is entitled to judgment as a matter of law. *See Pakootas*, 905 F.3d at 593-94.

Accordingly, the Court recommends Sharp's motion for summary judgment be granted as to the conditions of confinement claim.

1

2

3

4

5

6

7

8

9

10

11

### B.    Excessive Force

The Eighth Amendment's proscription on cruel and unusual punishment forbids prison officials from inflicting "the unnecessary and wanton infliction of pain . . . ." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Encompassed within the Eighth Amendment is a bar on the use of excessive force against prisoners. *See Hudson v. McMillian*, 503 U.S. 1, 7-10 (1992). Courts in the Ninth Circuit apply a five-part balancing test to excessive force claims: (1) the extent of the inmate's injuries; (2) the need for application of force; (3) the relationship between the need and amount of force; (4) the threat reasonably perceived by prison officials; and (5) any efforts that officials utilized to "'temper the severity of a forceful response.'" *Id*. at 7 (quoting *Whitley*, 475 U.S. at 321); *see also Wilkins v. Gaddy*, 559 U.S. 34, 36-38 (2010); *Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th Cir. 2003).

12

13

14

15

16

The inmate must demonstrate that officials acted maliciously and sadistically to prevail. "[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7. As the Ninth Circuit has explained,

17

18

19

20

21

> [t]he "malicious and sadistic" standard arose out of "the need to maintain or restore discipline" inside the prison.  When a prison disturbance occurs, prison officials must make "decisions 'in haste, under pressure, and frequently without the luxury of a second chance.'"  In these situations, prison officials are "accorded wide-ranging deference" and therefore, prisoners alleging excessive force must show that the force was applied "maliciously and sadistically to cause harm."

22

23

24

25

26

27

28

*Wood v. Beauclair*, 692 F.3d 1041, 1049-50 (9th Cir. 2012) (quoting *Hudson,* 503 U.S. at 6 and *Whitley,* 475 U.S. at 320). Thus, the Court must be careful when reviewing the factors to verify indicia of "such wantonness with respect to the unjustified infliction of harm as [is] tantamount to a knowing willingness that it occur." *Hudson*, 503 U.S. at 9. Moreover, there is no need for a showing of serious injury as a result of the force, but the lack of such injury is relevant to the inquiry. *See id.* at 7-9; *Martinez*, 323 F.3d at 1184; *Schwenk v. Hartford*, 204 F.3d 1187, 1196 (9th Cir. 2000).

Excessive force cases "nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom," and for this reason, the Ninth Circuit has "held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002); *see also Lolli v. Cnty. of Orange*, 351 F.3d 410, 415–16 (9th Cir. 2003); *Liston v. Cnty. of Riverside*, 120 F.3d 965, 976 n. 10 (9th Cir. 1997) (citing cases).

In the motion for summary judgment, Sharp contends he used reasonable force under the circumstances. (ECF No. 46 at 9.) Sharp trapped Sanchez's arm with his shield in response to Sanchez sticking his arm out, which Sharp perceived as a threat due to Sanchez's long history of propelling urine and other materials out of his cell through the food slot. Importantly, Sanchez did not suffer any injury, stated that nothing happened, and refused medical treatment. These facts were corroborated by several accounts of the same incident. Sharp contends that briefly trapping Sanchez's arm with the shield cannot be considered unreasonable in these circumstances. (*Id.*)

As discussed above, the undisputed facts, uncontradicted by Sanchez, are as follows. According to an investigation detail report, on Sunday, February 14, 2021, at approximately 1:13 p.m., Sharp used limited spontaneous force on Sanchez after Sanchez reached past Sharp's protective shield. (ECF No. 46-2 at 1.) There was a delay in Sanchez receiving his food because Sanchez had captured his food slot, resulting in him being the last inmate fed. (*Id.*) Sanchez demanded a new breakfast tray because there was a little bit of oatmeal in his eggs. (*Id.*) Sanchez threatened that he would throw feces and urine at Sharp. (*Id.*) Sanchez was instructed to clear his window, back up, and lift his jacket and spin around, and Sanchez complied. (*Id.*) The food slot was opened, the shield was placed in front of the food slot, and Sanchez was given his food tray. (*Id.*)

"After receiving his dinner tray when the shield was being lifted so the slot could be shut, he stuck his arm out and underneath the shield and demanded his toilet paper." (*Id.*) When Sanchez stuck his arm out, Sharp placed the shield on Sanchez's arm and used a minimal amount of force to trap Sanchez's arm so that he could not throw anything out of

the food slot at himself or non-party Officer Clay. (*Id.*) Sharp then removed the capture shield, backed away, gave Sanchez toilet paper, and secured the food slot. (*Id.*) The Shift Sergeant was notified of the use of force, and Medical responded to the scene. (*Id.*) Sanchez refused medical care and told both Nurse Love and Nurse Schuering that nothing happened, there was no force, and he just wanted his dinner tray. (*Id.*)

The investigation detail report from Officer Clay states that Sanchez sticking his arm out of the food slot was perceived as a threat and that Officer Sharp used a minimal amount of force. (*Id.* at 2.) Nurse Schuering's report stated that Sanchez refused medical care and stated, "what problem?" and "nothing happened." (*Id.*) Sergeant Christopher Miller reported that he accompanied medical staff to Sanchez's cell, watched Sanchez refuse medical treatment and heard Sanchez say, "Seen for what? Nothing happened, the officers feed [sic] me and I gave back my tray. Nothing happened." Nurse Schuering reported that Sanchez refused medical treatment, and a refusal of treatment and release of liability was placed in Sanchez's file. (*See* ECF No. 48-1; ECF No. 48-2.)

Here, based on the undisputed evidence, all five *Hudson* factors objectively weigh against finding an Eighth Amendment violation. *See Hudson*, 503 U.S. at 6-7. First, using force generally was necessary. Sanchez implicitly threatened Sharp when he stuck his hand out of his food slot, especially in light of Sanchez's threat that morning to throw urine and his long disciplinary history based on actually throwing feces and urine. (*See* ECF Nos. 46-2, 46-3, 46-9.)

Second, the amount of force used was proportional to the need. Sharp used minimal force to hold Sanchez's arm down to prevent him from throwing feces or urine. There is no evidence that Sharp used other, greater force to accomplish this. Thus, the force used was objectively minimal and proportional to the need to gain control of Sanchez's arm. Third, there is no report of injuries as a result of the alleged force. Sanchez refused medical treatment after the incident and stated "nothing happened." (*See* ECF Nos. 46-2, 48-1, 48-2.) Sanchez's injuries were minimal, if not de minimis. Thus, both the force Sharp used and Sanchez's injuries were insignificant here.

1    Next, the threat Sharp reasonably perceived was significant. As discussed above,

2    Sanchez had previously threatened and had actually thrown feces and urine in the past.

3    Thus, when Sanchez failed to follow Sharp's order to keep himself free of the food slot, a

4    reasonable officer would have felt threatened. Finally, Sharp made efforts to temper the

5    severity of his use of force. However, officers are sometimes required to use force if an

6    inmate refuses a valid order. *Whitley*, 475 U.S. at 320. Sharp had already instructed

7    Sanchez to keep himself clear of the food slot, and only resorted to using his shield after

8    Sanchez refused that order.

9    Based on the evidence before the Court, all five of the relevant *Hudson* factors

10   weight in favor of finding that Sharp did not use excessive force. There is no dispute as to

11   the minimal amount of force used, the circumstances under which it was applied, and the

12   lack of injuries to Sanchez as a result of the minimal force. As such, there is no genuine

13   issue of material fact as to the merits of the excessive force claim. Sanchez does not, and

14   cannot, show that Sharp applied force maliciously and sadistically to cause harm rather

15   than in a good-faith effort to maintain or restore discipline. *See Hudson*, 503 U.S. at 6. To

16   the contrary, Sharp applied a minimal amount of force necessary in a good-faith effort to

17   maintain order, and it was not done maliciously or sadistically to cause harm. Accordingly,

18   the Court recommends Sharp's motion for summary judgment be granted as to the

19   excessive force claim.[3]

20   **IV.    CONCLUSION**

21   For good cause appearing and for the reasons stated above, the Court

22   recommends that Sharp's motion for summary judgment, (ECF No. 46), be grant.

23   The parties are advised:

24   1.    Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of

25   Practice, the parties may file specific written objections to this Report and

26   _____

27   [3]    Because the Court recommends that the motion for summary judgment be granted
     in its entirety based on a finding that no constitutional violations occurred, it need not
28   address the argument regarding qualified immunity.

1    Recommendation within fourteen days of receipt. These objections should be entitled
2    "Objections to Magistrate Judge's Report and Recommendation" and should be
3    accompanied by points and authorities for consideration by the District Court.

4        2.    This Report and Recommendation is not an appealable order and any notice
5    of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District
6    Court's judgment.

7    **V.**    **RECOMMENDATION**

8        **IT IS RECOMMENDED** that Sharp's motion for summary judgment, (ECF No. 46),
9    be **GRANTED**.

10        **IT IS FURTHER RECOMMENDED** that the Clerk of Court **ENTER JUDGMENT**
11    accordingly and **CLOSE** this case.

12    **DATED**: _August 1, 2023_____.

13

14    _____
      **UNITED STATES MAGISTRATE JUDGE**

15

16

17

18

19

20

21

22

23

24

25

26

27

28